UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

-vs-

RUBEN BULLOCK,

Defendant

_____

DECISION AND ORDER

05-CR-6031 CJS
08-CV-6384 CJS

APPEARANCES

For Defendant:          Ruben Bullock, *Pro se*
                        14530-055
                        FCI Ray Brook
                        P.O. Box 9001
                        Ray Brook, New York 12977

For the United States:  Bret Puscheck, Esq.
                        Assistant United States Attorney
                        100 State Street, Room 620
                        Rochester, New York 14614

INTRODUCTION

Now before the Court is Ruben Bullock's ("Defendant" or "Bullock") *pro se*

application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For

the reasons set forth below, the application is denied.

Section 2255 provides, in relevant part, as follows:

A prisoner in custody under sentence of a court established by Act of
Congress claiming the right to be released upon the ground that the sentence
was imposed in violation of the Constitution or laws of the United States, or
that the court was without jurisdiction to impose such sentence, or that the
sentence was in excess of the maximum authorized by law, or is otherwise
subject to collateral attack, may move the court which imposed the sentence
to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The Court may dismiss a section 2255 petition without conducting a

1

hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255. In other cases, "[a] district court has a wide variety of tools available to it in developing the record during habeas proceedings." *Pham v. United States*, 317 F.3d 178,180 (2d Cir. 2003). Specifically,

> [i]t is within the district court's discretion to determine whether a hearing is warranted. Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits and written interrogatories. After expanding the record, the district court then decides if an evidentiary hearing also is required. Our precedent disapproves of summary dismissal of petitions where factual issues exist, but it permits a 'middle road' of deciding disputed facts on the basis of written submissions.

*Id*. at 184 (citations omitted). On this motion the Court did not conduct a hearing to take oral testimony from Defendant since, as discussed further below, the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

BACKGROUND

The facts of this case were accurately set forth in the Government's briefs, and in other documents in the record, as follows:

> On March 10, 2005, a federal grand jury returned a four-count Superseding Indictment against the defendant, Ruben Bullock. Count I charged a violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A) (possession with intent to distribute fifty grams or more of cocaine base); Count II charged a violation of Title 21, United States Code, Section 844(a) (possession in excess of five grams of cocaine base); Count III charged a violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) (possession with intent to distribute cocaine); and Count IV charged a violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(D) (possession with intent to distribute marijuana).
>
> Represented by Assistant Federal Public Defender Roxanne Mendez Johnson [("Mendez Johnson")], Bullock entered into a written plea agreement with the government on July 27, 2005, in which Bullock agreed to plead guilty to Count 1 of the Superseding Indictment. . . . Pursuant to the terms of that

agreement, the parties agreed upon a 262 month term of imprisonment pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The plea agreement contained a U.S.S.G. § 5K1.1 component as well. Consequentially, the plea agreement contained a waiver provision that, if sentenced to 262 months or less imprisonment, Bullock would not appeal, nor collaterally attack, any portion of his sentence. (See Exh. 1, ¶ 20, 21). The District Court made a finding that the plea was being entered into knowingly, intelligently and voluntarily, and thereafter accepted the Rule 11(c)(1)(C) plea agreement.

Government's Response [#60] at 1-2. During the plea, Defendant signed the Plea Agreement, and specifically indicated that he had read the agreement and had a full opportunity to discuss the agreement with Mendez Johnson. Plea Agreement [#60-2] at 19. It is also the Court's practice, without exception, to ask defendants if they have read the plea agreement,[1] and the Court would not have accepted the plea unless Defendant indicated that he had personally read the agreement.

> The plea agreement contained a USSG § 5K1.1 component which in addition to allowing for the potential of Bullock's cooperation, also allowed for the potential of third party cooperation. This is because at the time of the proceedings in federal court, Bullock was on New York State Parole ("Parole") and although the government had contacted Parole and requested that Bullock be allowed to cooperate with the government proactively, such proactive cooperation might have involved Bullock having contact with convicted felons and engaging in controlled purchases of illegal drugs and firearms. Even though such activity would take place under the direct supervision of law enforcement, it was not certain that Parole would necessarily relax their rules which typically prohibited such activity, to allow Bullock to provide proactive cooperation. It was this third party, acting on Bullock's behalf, who thereafter provided the majority of what would later be credited as substantial assistance to law enforcement.

> However, while awaiting sentencing, Bullock was again arrested for narcotics offenses, this time in state court. The charges included Criminal Possession of a Controlled Substance 3d, Criminal Possession of a Narcotic Drug 4th, Criminal Use of Drug Paraphernalia 2nd and Criminal Possession of Marijuana 5th. Following this arrest, the United States moved to have the Plea

---

[1] or had it read to them by counsel or an interpreter in the appropriate case.

Agreement declared breached, citing the clause contained at ¶ 29,which stated, in pertinent part, that "[i]t is a condition of this agreement that, up through the date of the defendant's sentencing, the defendant and others acting on behalf of the defendant shall commit no further crimes." In petitioning the District Court to declare that Bullock breached the plea agreement, the United States sought relief from its obligations under the agreement to move for a departure under Guidelines Section 5K.

While the motion was pending, the United States and the defendant negotiated a resolution whereby the government would withdraw the motion for breach, and move for a downward departure of two levels based on substantial cooperation that was detailed in a letter to the court dated October 23, 2006. The recommended two level downward adjustment would reduce Bullock's adjusted base offense level from level 34 to level 32. The United States also agreed to recommend a 210-month sentence, the low end of the new 210 to 262 month guideline range. The District Court granted the motion and, on October 30, 2006, sentenced Bullock to a 210-month term of imprisonment, 52 months less than the sentence agreed upon in the Rule 11(c)(1)(C) plea agreement.

Some months later, subsequent to the imposition of sentence, the government was notified by counsel that Bullock may be in a position to provide additional substantial assistance to law enforcement. Therefore, in order to preserve the right to possibly make a Rule 35 motion beyond the one-year anniversary date of Bullock having been sentenced, on October 30, 2007, the government filed a protective Motion for Reduction of Sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

***

In the motion, the government stated that it "may be in a position post-sentencing to make a further request for a reduction pursuant to Rule 35. The government now seeks to file a protective Rule 35 motion to preserve the parties' rights to bring such a motion beyond the statutory one year window". The government candidly stated that it was unable to fully evaluate and/or act upon any information at that time.

Government's Memo [#64] at 3-7. Notably, the Government apparently made the protective motion, to preserve Defendant's rights, at the urging of Mendez Johnson, who was concerned that the 35(b) motion be made within one year of Defendant's sentencing. *See*, § 2255 Motion, Exhibits, Mendez Johnson letter to Defendant dated March 30, 2007 ("As we discussed, there will be no commitment in writing [concerning a Rule 35(b) motion], until

4

a few months from now.  I have already put a call into [the  Assistant U.S. Attorney] to

remind him that your sentencing took place in October of 1996.").  The Court granted the

Government's request for a Protective Order [#42].  Subsequently, however, the

Government chose not to file a Rule 35(b) motion, purportedly because Defendant provided

no further substantial assistance. *See*, Government's Memo [#64] at 8 ("[C]ontrary to

Bullock's claims, no further post-sentencing substantial assistance was obtained.").[2]

Thereafter,  "[o]n March 12, 2008, Bullock filed a motion for reduction of sentence

pursuant to 18 U.S.C. § 3582(c)(2). The Court denied the motion, holding that Bullock was

ineligible for a reduction based upon his status as a career offender." Government's

Response [#60] at 1-3.

On August 22, 2008, Defendant filed the subject motion [#54] pursuant to 28 U.S.C.

§ 2255, alleging, "ineffective assistance of counsel, counsel failed to file specifically

requested notice of appeal." Motion [#54] at 5.[3]  Defendant indicated that he wanted to

appeal his conviction, *inter alia* because an officer coerced a confession from him based

---

[2]The Government indicates that although Defendant was willing to attempt to offer substantial assistance, he was unable to do so because of his parole status and his federal incarceration. *See, id*. at n. 1.

[3]On October 31, 2006, the Court entered judgment  on Defendant's conviction and sentence. Docket [#37].  Defendant did not appeal, and as noted above, as part of his Plea Agreement he expressly waived his right to appeal, modify, or collaterally attack his sentence if he received a sentence of 262 month or less. *See*, Plea Agreement at 10.  Consequently, Defendant's conviction became final ten days after entry of judgment, excluding weekends and holidays. *See, Moshier v. U.S.*, 402 F.3d 116, 118, n. 1 (2d Cir. 2005) ("Under Federal Rule of Appellate Procedure 4(b), a defendant's notice of appeal from a judgment of conviction must be filed within ten days. Pursuant to Federal Rule of Appellate Procedure 26(a)(2), as amended effective December 1, 2002 and as currently enacted, the time for filing a notice of appeal is computed by excluding intermediate Saturdays, Sundays, and legal holidays.") (Rule 4(b) has since been amended to provide that the notice of appeal must be filed within fourteen days).  Specifically, Defendant's judgment of conviction became final on November 15, 2006.  Consequently, Defendant had to file any collateral attack on or before November 16, 2007, pursuant to the applicable one-year statute of limitations. 28 U.S.C. § 2255(f).  Defendant's motion was filed nine months late.  The Government, though, has not raised the statute of limitations affirmative defense.

on a promise that he would receive a sentence of "5 years flat 3 ½ parole in the state not federal prison." *Id.* As part of his motion, Defendant states, "I was told by my attorney not to appeal. I was told I couldn't appeal because at the time she had me under the impression that there would be a Rule 35 [motion] being filed on my behalf by the U.S. Attorney's office . . . due to my proactive cooperation involving myself . . . any my proxy[.] . . . Then she said it wasn't going to happen and I haven't spoken to her since." § 2255 Motion at 4. Defendant attached various correspondence between himself and Mendez Johnson to the motion, although none of the letters referred to an appeal.[4]

Mendez Johnson initially declined to provide an affidavit concerning Defendant's allegations, citing attorney client privilege. However, on October 28, 2008, the Court held a hearing,

> to determine whether Bullock waived his attorney-client privilege by arguing that counsel provided ineffective assistance of counsel. . . . At the hearing, the District Court specifically determined on the record that Bullock had waived his attorney-client privilege by putting at issue discussions he may or may not have had with Ms. Mendez Johnson, Esq., during the course of her representation of him, to wit: that he had directed her to file a Notice of Appeal.

Government's Response [#60] at 1-3. At the Court's direction, Mendez Johnson submitted an affidavit, stating in pertinent part:

> After Mr. Bullock was sentenced, I explained to him that because Judge Siragusa sentenced him to a sentence below the range of 262 to 327 months, that his right to appeal the sentence had been waived. I also explained to him that nevertheless, if he directed me to file an appeal, I would do so. Mr. Bullock indicated that he did not want me to file a notice of appeal on his behalf. He wanted the original sentence to stand, and he was hopeful that a

---

[4]The letters shed light on Defendant's hope that the Government would eventually make a Rule 35(b) motion. For example, on March 30, 2007, Mendez Johnson advised Defendant that "there will be no commitment in writing until a few months from now." There is no indication in the correspondence that the Government ever agreed to file a Rule 35(b) motion.

Rule 35 reduction could be achieved.

Mendez Johnson Aff. [#60-4] at ¶¶ 6-7.  Mendez Johnson therefore expressly denies that Defendant directed her to file an appeal.

In response, Defendant filed an unsworn reply [#62], stating that Mendez Johnson told him that she would not file motions on his behalf, or file a notice of appeal.  He states that Mendez Johnson "had  him under the impression" that the Government would eventually file a Rule 35(b) motion.  He further alleges that Mendez Johnson refused to provide him with certain unspecified papers, and that he never had the opportunity to read his Plea Agreement until recently.  However, the bulk of Defendant's response consists of his arguments for why the Government should permit him to provide additional assistance in order to receive a reduced sentence.  Defendant also asks the Court to appoint him an attorney.

DISCUSSION

At the outset, the Court finds that appointment of counsel is not warranted. Defendant does not have a constitutional right to court-appointed counsel in connection with a § 2255 motion. *See, Bloomer v. U.S.*, 162 F.3d 187, 191, n. 1 (2d Cir. 1998) ("[A] petitioner has no right to the effective assistance of counsel when he collaterally attacks his conviction.") (citation omitted).  Additionally, since the Court is not going to conduct a full-blown testimonial hearing, it is not required to appoint counsel. *See*, Rule 8(c), Rules Governing Section 2255 Proceedings for the United States District Courts; *see also, Little v. U.S.*, No. 3:05cv1674 (MRK), 2006 WL 2361723 at *1 (D.Conn. Aug. 15, 2006) (Rule 8(c) of Rules Governing § 2255 Proceedings does not require appointment of counsel where court can resolve motion on written submissions); *Lifrieri v. Stinson*, No. 97-CV-6868, 2009

WL 2413400 at *5 (E.D.N.Y. Jul. 31, 2009) ("Not every hearing is evidentiary. Rule 8(c) and

the *Graham* decision do not extend to non-evidentiary hearings.") (referring to *Graham v.*

*Portuondo*, 506 F.3d 105, 108 (2d Cir. 2007)). Moreover, although the Court may appoint

counsel in the interests of justice, *see*, 18 U.S.C. § 3006A(a)(2)(B), it finds, having

considered the relevant factors, that appointment of counsel is not warranted in this case.

*See*, *e.g.*, *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *Hodge v. Police*

*Officers*, 802 F.2d 58 (2d Cir. 1986).

Turning to the merits of Defendant's motion, he maintains that he directed Mendez

Johnson to file an appeal and she refused. Specifically, he states:

> Ms. Mendez Johnson didn't provide all of the facts clearly to my
> understanding of the situation. First, Roxanne Mendez Johnson didn't and
> told me she wouldn't file not one motion on my behalf including a Notice of
> Appeal *but only after I provided all of the information [Assistant U.S. Attorney]*
> *Bret A. Puscheck wanted*. This court can see from the exhibit that I filed with
> my 28 U.S.C. § 2255 motion.[5]
>
> ***
>
> Roxanne Mendez Johnson Esq. refused to do everything I ask[ed] her to do.
> Why I don't know only she can answer that question.

Reply [#62] at 1-2, 4 (emphasis added). Defendant also alleges that he never had an

opportunity before now to read his Plea Agreement, which he, along with Mendez Johnson,

executed in the Court's presence in 2005. *Id*. at 4-5 ("This is the first time I have been able

to read my plea agreement.").

It is clear that an attorney who fails to file a notice of appeal when instructed to do

so by his client provides ineffective assistance of counsel, even where, as here, the

defendant has waived the right to appeal. *See, Campusano v. U.S.*, 442 F.3d 770 (2d Cir.

---

[5]Contrary to Defendant's suggestion, the exhibits to which he refers, consisting of letters from
Mendez Johnson, say nothing whatsoever concerning an appeal.

8

2006).  When a defendant makes such an allegation, the district court must "hold a hearing [to determine whether the defendant actually directed the attorney to file an appeal] without assessing the merits of the requested appeal." *Id*. at 776.  Such hearing, though, need not be a full-blown testimonial hearing. *Id*. ("As noted in *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir.2001), and *Pham v. United States*, 317 F.3d 178, 184 (2d Cir.2003), the district court has discretion to determine if a testimonial hearing will be conducted.") (citation omitted).  If after such inquiry the court determines that the attorney in fact failed to file an appeal after being directed to do so, the court should grant the § 2255 motion and allow defendant to file an appeal. *Campusano*, 442 F.3d at 776.

In this case, the Court takes the "middle road" described in *Pham*, and conducts its inquiry based on the written submissions. *See, Pham v. U.S.*, 317 F.3d at 184 ("Our precedent . . . permits a 'middle road' of deciding disputed facts on the basis of written submissions.") (citation omitted).  On one hand, the Court has Mendez Johnson's affidavit, in which she states that Defendant did not want her to file an appeal.  On the other hand, the Court has Defendant's submission, in which he states that Mendez Johnson told him that she would not file an appeal until *after* he finished his post-sentence cooperation with the Government. Alternatively, Defendant's statement can interpreted to mean that Mendez Johnson waited until after Defendant had provided all of the information that the Government wanted before telling him that she would not file motions or a notice of appeal. To the extent that Defendant is claiming that Mendez Johnson told him that she would not file a notice of appeal unless he first finished cooperating with the Government, such claim makes no sense, since there  was only a ten-day window to file an appeal following sentencing.  Mendez Johnson was an experienced Assistant Federal Public Defender who

obviously knew that she could not wait to file a notice of appeal until after Defendant had finished providing assistance. Such claim is also inconsistent with Mendez Johnson's demonstrated concern for deadlines and for protecting Defendant's rights, as exemplified by her request for the Government to file a protective Rule 35 motion within the year following Defendant's sentence.

To the extent that Defendant is claiming that Mendez Johnson waited until after he "provided all of the information [the Government] wanted" before telling him that she would not file an appeal, such claim suggests that prior to being so notified, Defendant believed that Mendez Johnson was pursing an appeal. However, the Court similarly finds such claim not credible. In that regard, Defendant was still attempting to have the Government make a Rule 35 motion more than a year after he was sentenced. It was not until some time later that he apparently learned that the Government was not interested in making a Rule 35 motion. There is no indication during that period that Defendant believed that Mendez Johnson was pursuing an appeal on his behalf. In fact, during the almost two years that elapsed between his sentencing and the filing of this motion, there is no indication, apart from his own conclusory statement, that Defendant contacted Mendez Johnson or anyone else concerning an appeal, even after it must have been apparent to him that the Government was not interested in filing a Rule 35 motion.

The Court also finds that other aspects of Defendant's submissions are not credible. For example, as noted in footnote 4 above, Defendant incorrectly suggests that the correspondence attached to his motion shows that Mendez Johnson refused to file an appeal. Moreover, Defendant's contention that he never had an opportunity to review the Plea Agreement prior to entering his plea is contradicted by his sworn statements during the

plea.  For all of these reasons, the Court finds Defendant not credible.

Conversely, the Court finds that Mendez Johnson's affidavit has the ring of truth.  For example, Mendez Johnson's statement that Defendant did not want her to appeal, since he was satisfied with the sentence he received, is consistent with the fact that he was given fifty-two months less than what he agreed to in the plea agreement.  Similarly, Mendez Johnson's contention that Defendant wanted her to pursue a Rule 35 reduction, rather than an appeal, is consistent with the correspondence between Mendez Johnson and Defendant, which, as noted above, contains no reference to an appeal.  Accordingly, the Court finds that Defendant's ineffective assistance claim lacks merit.

Apart from the claim of ineffective assistance, Defendant's papers are clearly intended to re-start negotiations with the Government, and to allow him to provide additional assistance in the hope of obtaining a further reduction of his sentence.  *See, e.g.*, Reply [#62] at 3 ("I am still ready and willing to cooperate with the Government and respectfully request that [the Assistant U.S. Attorney] re-consider working with myself Ruben L. Bullock along with my proxy[.]"); *id*. at 6 ("I, Ruben L. Bullock respectfully submit this motion to this Court in hope that everyone involved can come to an agreement on how to move forward with this situation.").  However, the Court does not read Defendant's papers as claiming that the Government is under any obligation to work with him.  Nevertheless, to the extent that he may be making such a claim, it too lacks merit.

## CONCLUSION

For the foregoing reasons, Defendant's application under 28 U.S.C. § 2555 [#54] is denied.  The Clerk of the Court is directed to close this case.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Defendant has not made a

substantial showing of the denial of a constitutional right.

So Ordered.

Dated:     Rochester, New York
           February 1, 2011

                                    ENTER:


                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge